## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **PAUL BONDAR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 24 C 11387** |
| **v.** | ) | |
| | ) | **Hon. Jorge L. Alonso** |
| **NEXSTAR MEDIA GROUP, INC.,** | ) | |
| **GANNETT CO., INC., AMERICANS 4** | ) | |
| **SECURITY, INC. AND ABC NEWS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

For the reasons stated herein, defendant Gannett Co., Inc.'s motion to dismiss and sever [20] is granted. Defendant Americans 4 Security, Inc.'s motion to dismiss for lack of personal jurisdiction [23] is granted as unopposed, and its motion for sanctions [40] is denied. Defendant ABC News, Inc.'s motion to dismiss and sever [26] is granted. Defendant Nexstar Media Group, Inc.'s motion to dismiss [29] and motion to sever [36] are granted. Plaintiff shall file an amended complaint, if desired, by 9/2/25. A status hearing is set for 9/10/25 at 9:30 am. The parties shall file a joint status report by 9/5/25.

## STATEMENT

Plaintiff, Paul Bondar, brings this defamation action against several media organizations, Defendants Gannett Co., Inc. ("Gannett"), Nexstar Media Group, Inc. ("Nexstar"), and ABC News, Inc. ("ABC"),[1] for certain statements they made in news reports while covering Plaintiff's campaign for office in Oklahoma. Now before the Court are Defendants' separate motions to dismiss and sever, which the Court grants for the following reasons.

### I.    Background

Plaintiff initially filed this case in the Circuit Court of Cook County, whereupon Nexstar removed it to this court based on diversity of citizenship jurisdiction under 28 U.S.C. § 1332. The material allegations of the complaint are as follows.

Plaintiff is a successful businessman who founded and, for thirteen years, served as president of Illinois-based Bondar Insurance Group, Inc., an insurance brokerage serving the

---

[1] Another defendant, Americans 4 Security, Inc., moves to dismiss for lack of personal jurisdiction, and Plaintiff states in his combined response brief (ECF No. 43) that he does not oppose the motion, which is accordingly granted.

trucking industry. In 2021, Plaintiff sold the business to the Alera Group. He continues to serve as managing partner.

In 2024, Plaintiff ran for the Republican party nomination for Oklahoma's Fourth Congressional District in the United States House of Representatives against the incumbent officeholder, Tom Cole. During the campaign, Plaintiff contends, Defendants defamed him in certain false news reports.

In May 2024, KFOR News, owned by Nexstar, reported that it was unable to confirm if Plaintiff is an Oklahoma resident, and it repeated his adversary Tom Cole's statement that "Mr. Bondar doesn't live in Oklahoma at all." WGN-TV, another Nexstar-owned outlet, similarly reported that it was unable to confirm whether Plaintiff was an Oklahoma resident. Plaintiff alleges that he is an Oklahoma resident and these reports were false.

In June 2024, *The Oklahoman*, an Oklahoma-City-based newspaper owned by Gannett, published an article with the following headline: "Texan seeking Rep. Cole's seat leasing condo owned by Russian singer tied to Putin, records show." The lede stated, "A condominium leased by the Texas millionaire trying to unseat Rep. Tom Cole is owned by the family of a Russian pop star with ties to Russian President Vladimir Putin," according to documents obtained by the newspaper. The article explained as follows:

> Information on the Bondar Insurance Group's website lists an office in Hallandale Beach, Florida, at 1945 S Ocean Drive, unit 12. That condo is leased by Paul Bondar and his wife, Jennifer. Bondar is the Texas millionaire seeking to unseat Cole.

> Records from the Broward County appraiser's office show the Florida condo is owned by Muza Marin Inc. The company's registered agent is Lioudmila Issakovitch. Issakovitch and her husband, Valerii Leontiv, are Russian pop stars with close ties to Putin.

(Compl. Ex. A, ECF No. 1-1 at 18.) The article went on to quote a spokesperson for Plaintiff's campaign, who explained that one of the Bondars' business partners in a development project, 1212 Atlantic Properties LLC, had moved into the condo in question, which was in the same building where their business entity leased office space. However, the partner had already moved out of the condo and into another unit in the building. The article also stated that, although Plaintiff professed to live in Oklahoma, he had moved from Illinois to Texas in 2020, "holds a Texas driver's license and voted as recently as March 5 in a Texas election." (*Id.* at 20.) ABC News later reported in a similar story that there were "ties between Bondar and people connected to Russian President Vladimir Putin."

2

Plaintiff claims that these false reports caused him to lose the primary election, in which he had personally invested millions of dollars, and damaged his relationship with the Alera Group, which threatened to terminate its relationship with Plaintiff and rescind a portion of the sale of his business. He asserts his claims against Defendants in three counts, for defamation *per se* (Count I), defamation *per quod* (Count II), and false light invasion of privacy (Count III).

## II.    Legal Standards

A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To state a claim, the plaintiff must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alteration marks omitted). This requires the plaintiff to make factual allegations that "raise a right to relief above the speculative level." *Id.* Stated differently, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). However, it need not "accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The Court may consider, "in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To state a defamation claim under Illinois law, which all parties cite, "a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). Defamation may be either *per se* or *per quod*. "A statement is defamatory per se if its harm is obvious and apparent on its face," *id.*, such that "the plaintiff need not plead or prove actual damages," which are presumed. *Dobias v. Oak Park & River Forest High Sch. Dist. 200*, 57 N.E.3d 551, 562 (Ill. App. Ct. 2016). Statements that are defamatory *per se* must fall into one of several enumerated categories, only two of which are potentially relevant here, namely, "words that impute a person is unable to perform or lacks integrity in performing her or his employment duties" and "words that impute a person lacks ability or otherwise prejudices that person in her or his profession." *Green*, 917 N.E.2d at 459. In a defamation *per quod* action, by contrast, damages are not presumed, so "the plaintiff must plead and prove special damages." *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006). Under Federal Rule of Civil Procedure 9(g), this requirement is met if the plaintiff states

damages "specifically" by "identify[ing] a concrete loss." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013).

Even statements that are defamatory *per se* are not actionable if they are "'reasonably capable of an innocent construction.'" *Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016) (quoting *Green*, 917 N.E.2d at 463). In applying this rule, courts must "give the defendant's words their natural and obvious meaning, after having considered 'both the substance of defendant's alleged statements and the context in which they allegedly were made.'" *Huon*, 841 F.3d at 738 (quoting *Green*, 917 N.E.2d at 464); *see Naked City, Inc. v. Chicago Sun-Times*, 395 N.E.2d 1042, 1044 (Ill. App. Ct. 1979) ("In determining if an article is [defamatory], the words complained of must be construed in the context of the article as a whole, and the headline must be considered together with the text of the article.") Relatedly, "if the gist of a defamatory statement is true, if in other words the statement is substantially true, error in detail is not actionable." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993). "Implicit in this defense is the idea that [the] publication as it stood must make the plaintiff significantly worse off than a completely or literally truthful publication would have." *Pope v. Chron. Pub. Co.*, 95 F.3d 607, 613 (7th Cir. 1996).

In addition to these common-law limitations, the First Amendment imposes certain additional constraints on defamation claims. Statements are constitutionally protected if they "cannot be 'reasonably interpreted as stating actual facts.'" *Bryson v. News Am. Publications, Inc.*, 672 N.E.2d 1207, 1220 (Ill. 1996) (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)). Under this principle, a statement is not actionable if it consists only of opinion, rhetorical hyperbole, or otherwise "loose, figurative or hyperbolic language," *Bryson*, 672 N.E.2d at 1220, that is "either too vague to be falsifiable or sure to be understood as merely a label for the labeler's underlying assertions." *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996). Further, when the plaintiff is a "public figure," he must demonstrate that the defendant made the allegedly defamatory statement with "actual malice," *Pippen*, 734 F.3d at 612 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). "Actual malice," in this context, means "with knowledge that [the challenged statement] was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 279-80. Political candidates, like Plaintiff, qualify as "public figures" for purposes of this principle. *See id.* at 279-82; *Howell v. Blecharczyck*, 457 N.E.2d 494, 498 (Ill. App. Ct. 1983). Such plaintiffs must plausibly allege "'that the defendant in fact entertained serious doubts as to the truth of his publication,' or 'actually had a high degree of awareness of . . . probable falsity.'" *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), and *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989)).

"To state a cause of action for false-light invasion of privacy, a plaintiff must allege that: (1) the plaintiff was placed in a false light before the public as a result of the defendants' actions; (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice, that is, with knowledge that the statements

4

were false or with reckless disregard for whether the statements were true or false." *Dobias*, 57 N.E.3d at 574.

## III. Analysis

Defendants argue that Plaintiff's allegations are legally insufficient to state a defamation claim for a number of reasons. In one category of arguments, Defendants attack the alleged falsity of the challenged statements, contending that they are substantially true. Judicially noticeable public records show that 1212 Atlantic Properties LLC, a development company of which Jennifer Bondar was a managing member, did rent a condo in a building at 1945 S Ocean Drive in Hallandale Beach, Florida, which was owned by Russian pop stars with whom Vladimir Putin had a relationship. Similarly, public records show that Plaintiff voted in Texas as recently as March 2024, only about three months before the challenged reports referring to him as a "Texan," and he claimed a homestead exemption on his Texas home, which he still owned at the time of the challenged statements. To the extent the challenged statements contain any seemingly defamatory details or terms, Defendants argue, the statements are at least substantially true as to these key details, and they are subject to an innocent construction confining the meaning of the statements to these true facts.

It may be telling that Plaintiff does not specifically refute these arguments. In his opposition brief, he responds to them in only the most conclusory fashion: he simply states that his complaint alleges that the challenged statements are false. But Defendants explain that "[e]very detail" in the preceding paragraph "comes from public documents," *see Wilkow v. Forbes, Inc.*, 241 F.3d 552, 556 (7th Cir. 2001), which, they argue, demonstrates "the truth of the 'gist' or 'sting'" of the challenged statements. *Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 982 (7th Cir. 2004); *see id.* at 986-87; *see also id.* at 989 (citing *Vachet v. Cent. Newspapers, Inc.*, 816 F.2d 313, 316-17 (7th Cir. 1987)). Plaintiff ignores these public documents and does not engage with the argument that they show that the challenged statements are at least "substantially" true or subject to an innocent construction. Even in response to a motion to dismiss, which does not require the plaintiff to come forward with evidence, federal courts have required more from defamation plaintiffs. *See Cheng v. Neumann*, 51 F.4th 438, 445-47 (1st Cir. 2022) (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998)) ("A complaint cannot plausibly allege falsity where, as here, materials incorporated into the complaint refute that very assertion."); *Huon*, 841 F.3d at 739; *Lott v. Levitt*, 556 F.3d 564, 569 (7th Cir. 2009). Plaintiff seems to suggest, in his opposition brief, that Defendants' statements communicated to recipients that he was not eligible to represent Oklahoma in Congress based on his residency or that the term "ties" suggested a close relationship to Putin, but these are not plausible inferences when the statements are considered in the context of the reports as a whole. *Cheng*, 41 F.4th at 446-47; *see McKee v. Cosby*, 874 F.3d 54, 60-61, 63 (1st Cir. 2017); *Naked City*, 395 N.E.2d at 1044. Even if some readers might have drawn such extravagant inferences, it does not follow that they represent the only reasonable ways to construe the statements, and if the statements are subject to innocent constructions, they cannot support Plaintiff's defamation claims. *See Pope*, 95 F.3d at 613 ("The

5

court is not to balance reasonable constructions, nor is it necessary to conclude that the statement *cannot* be construed in a defamatory way.").

Nevertheless, the Court hesitates to dismiss Plaintiff's defamation claims based on these issues at this early stage. *See Wilkow*, 241 F.3d at 556 (faulting district court for dismissing defamation complaint for failure to state a claim, rather than waiting for summary judgment stage, notwithstanding that the appellate court agreed that the challenged statements were nonactionable opinions). But even putting aside the issues of substantial truth, innocent construction, and rhetorical hyperbole, dismissal is required based on the absence of any factual allegations of malice sufficient to support a plausible defamation claim. Even if there is some sense in which Defendants' statements might be construed as containing actionably false factual assertions, the statements had a foundation in facts backed by public records, and Plaintiff has not alleged that Defendants had (or have, for that matter) any reason to know the statements were false. Defendants were not required to investigate the matter fully before reporting what they knew, *see Pippen*, 734 F.3d at 614 (citing *Connaughton*, 491 U.S. at 688 ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard [for the truth].")), nor were they required to include enough information to make for a "'balanced' and 'fair account,'" unless they knew enough to "'confirm the probable falsity' of the allegedly defamatory statements," *Lemelson*, 903 F.3d at 25 (quoting *Connaughton*, 491 U.S. at 688). Indeed, in *Pippen*, the defendants freely conceded that if they had "conducted even a cursory investigation" before publishing the challenged statement, they would have known the statement was false. 734 F.3d at 614. Nevertheless, because there were no allegations to support any plausible inference of actual malice, *i.e.*, that they had actual knowledge of falsity or reckless disregard for the truth, the plaintiff failed to state a defamation claim. *Id.* Similarly, here, the complaint is bereft of any factual allegations suggesting that Defendants had any reason to doubt the veracity of their statements. Without some such facts, Plaintiff does not state a plausible claim of defamation. The Court need not address Defendants' other arguments, including those about whether the challenged statements fit into any of the defamation *per se* categories or, if not, whether Plaintiff has sufficiently alleged special damages. Both defamation claims are dismissed for failure to state a claim due to the absence of factual "details sufficient to render [Plaintiff's] claim plausible." *Id.*

That still leaves Plaintiff's false-light claim, but it suffers the same fate as the defamation claims for the same reason. Actual malice, defined in the same way, is also an element of the false-light claim, and the absence of allegations sufficient to support a plausible inference that Defendants acted with malice dooms the false-light claim as well as the defamation claims. *See Pippen*, 734 F.3d at 613; *see also Madison v. Frazier*, 539 F.3d 646, 659 (7th Cir. 2008); *Dorman v. Madison Cnty.*, No. 3:21-CV-1395-JPG, 2022 WL 874733, at *4 (S.D. Ill. Mar. 24, 2022); *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 907 (7th Cir. 2007).

For the foregoing reasons, Defendants' motions to dismiss for failure to state a claim are granted. Plaintiff's complaint is dismissed. Because the decision derives from the absence of allegations containing the requisite factual matter, and the Court has no way of knowing whether

Plaintiff can supply what is missing, the Court cannot say that the complaint "suffer[s] from such obviously incurable defects" that Plaintiff cannot possibly state a claim. *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Therefore, the Court must give him "at least one opportunity to amend his complaint." *Id.*

The possibility of amendment requires the Court to address the question of severance. The three remaining defendants all seek to sever the claims against them under Federal Rule of Civil Procedure 21, arguing that the claims against them are misjoined in this action. Under Federal Rule of Civil Procedure 20, a plaintiff may join claims against separate defendants in one action only if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Although the claims in this action overlap because the challenged statements are "addressing [some of] the same subject matter," the statements were made by separate defendants acting independently, and therefore the claims arise out of separate occurrences, for purposes of Rule 20. *See Morton Grove Pharms. v. Nat'l Pediculosis Ass'n*, 525 F. Supp. 2d 1049, 1051 (N.D. Ill. 2007). Therefore, severance is appropriate. Because, based on the present ruling, there is no operative complaint on file, the Court will not sever the claims now. If Plaintiff files an amended complaint against all three remaining defendants or any two of them, the Court will direct the Clerk to create separate docket numbers for the claims against each defendant, with original filing dates of November 5, 2024, the date these proceedings began in this Court, and Plaintiff will have to pay separate filing fees for each action. The Court sets a status hearing for 9/10/25 at 9:30 am. The parties shall file a joint status report by 9/5/25.

The only remaining matter is the motion for sanctions filed by Americans 4 Security, Inc. ("A4SI"). A4SI argues that the claims against it were frivolous from the start for several reasons, including an obvious lack of personal jurisdiction, and it asks for sanctions in the amount of its "costs and attorney's fees incurred . . . in responding to Bondar's claims." (ECF No. 40.) While the Court does not condone the sloppiness of Plaintiff's pre-suit investigation or his negligence in failing to more promptly dismiss the suit as to A4SI, his missteps do not rise to the level of the egregious errors in, for example, the recent case of *Eberhardt v. Walsh*, 122 F.4th 681, 687 (7th Cir. 2024), cited by A4SI. There is no record of contumacious conduct here, and A4SI was not required to do much more than send a letter and file a motion to dismiss for lack of personal jurisdiction (a defense that is waivable). A4SI does not say what amount it seeks in sanctions, so, if the Court were to grant its motion, further proceedings and another round of briefing would be necessary to determine the amount of sanctions that would be appropriate. Given that the case was resolved as to A4SI at an early stage, any judicial interest in punishing Plaintiff for the mistakes it made by involving A4SI in this suit is not sufficiently weighty to justify prolonging this matter any further. The administration of justice is best served by calling Plaintiff's mistakes what they were—mistakes—and moving on, without allowing them to waste more of the Court and the parties' time. *See Kilborn v. Amiridis*, No. 22 C 475, 2023 WL 2058061, at *13 (N.D. Ill. Feb. 15, 2023). Therefore, the motion for sanctions is respectfully denied. The Court trusts that, with the

7

specter of sanctions having now been raised in this case, and with Plaintiff on notice that he has some significant pleading obstacles to overcome, Plaintiff will tread carefully in any amended complaint he may choose to file. *See id.* (denying motion for sanctions at motion to dismiss stage but warning plaintiff that it would "entertain a renewed motion for sanctions" if plaintiff "persists in presenting potentially spurious allegations" in any amended pleading).

**SO ORDERED.**                                        **ENTERED: August 19, 2025**


**HON. JORGE ALONSO**
**United States District Judge**

8