**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PAUL BONDAR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24 C 11387 |
| v. | ) | |
| | ) | |
| GANNETT CO., INC.. | ) | Hon. Jorge L. Alonso |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

| | | |
|---|---|---|
| PAUL BONDAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 25 C 12226 |
| | ) | |
| ABC NEWS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

For the reasons stated herein, Defendant Gannett Co., Inc.'s motion to dismiss [66] is granted. Defendant ABC News, Inc.'s motion to dismiss [5] is granted. These cases are dismissed with prejudice for failure to state a claim. Judgment shall enter. The Clerk is directed to enter this Order in both Case No. 24 C 11387 and Case No. 25 C 12226 and close both cases.

**STATEMENT**

Plaintiff, Paul Bondar, brings these related defamation actions, asserting diversity jurisdiction under 28 U.S.C. § 1332, against two media organizations, Defendants Gannett Co.,

Inc. ("Gannett"), and ABC News, Inc. ("ABC"). His claims arise out of certain statements Defendants made in news reports while covering Plaintiff's congressional campaign in Oklahoma. The Court previously dismissed an earlier version of Plaintiff's complaint for failure to state a claim, due to his failure to plausibly allege that Defendants acted with actual malice. *Bondar v. Nexstar Media Group*, No. 24 C 11387 (N.D. Ill. Aug. 19, 2025), Dkt. No. 52. Plaintiff subsequently filed the operative amended complaint. (Am. Compl., *id.* (N.D. Ill. Sep. 30, 2025), Dkt. No. 61.) The Court ordered the claims severed as to the separate defendants, with the claims against each defendant to proceed in separate actions. Defendants have each moved to dismiss the amended complaint for failure to state a claim. Because the legal issues in both motions to dismiss are the same, the Court addresses them together in this Order.

## I. Background

Plaintiff is a successful businessman who founded the Illinois-based Bondar Insurance Group, Inc., an insurance brokerage serving the trucking industry. He sold the company in 2021, although he still serves as its managing partner. He bought property in Oklahoma in 2022 and then again in 2023, where he intended to build a home. In 2024, he ran for the Republican party nomination for Oklahoma's Fourth Congressional District in the United States House of Representatives against the incumbent officeholder, Tom Cole.

In June 2024, *The Oklahoman*, an Oklahoma-City-based newspaper owned by Gannett, published an article with the following headline: "Texan seeking Rep. Cole's seat leasing condo owned by Russian singer tied to Putin, records show." (*Id.* ¶ 17.) The lede stated, "A condominium leased by the Texas millionaire trying to unseat Rep. Tom Cole is owned by the family of a Russian

pop star with ties to Russian President Vladimir Putin," based on documents obtained by the newspaper. (*Id.*) The article explained as follows:

> Information on the Bondar Insurance Group's website lists an office in Hallandale Beach, Florida, at 1945 S Ocean Drive, unit 12. That condo is leased by Paul Bondar and his wife, Jennifer. Bondar is the Texas millionaire seeking to unseat Cole.
>
> Records from the Broward County appraiser's office show the Florida condo is owned by Muza Marin Inc. The company's registered agent is Lioudmila Issakovitch. Issakovitch and her husband, Valerii Leontiv, are Russian pop stars with close ties to Putin.

(Clark Decl. Ex. 15, Case No. 24 C 11387, Dkt. No. 67-16, PageID#548; *see also* Compl. Ex. A, Case No. 24 C 11387, ECF No. 1-1 at 18.) The article went on to quote a spokesperson for Plaintiff's campaign, who explained that it was actually one of the Bondars' business partners in a development project, 1212 Atlantic Properties LLC, who had leased the condo, in the name of the LLC. The condo, where the business partner lived and worked, was in the same building where Bondar Insurance Group leased office space. (*Id.*) However, the spokesperson explained, the partner had already moved out of the condo and into another unit, and the Bondars did not know the owners of the condo. (*Id.*) The article also stated that Plaintiff had lived and worked in Illinois until 2020, when he moved to Texas, where he had voted as recently as March 5, 2024. However, the article noted, Plaintiff professed to live in Oklahoma, was registered to vote in Oklahoma as of April 3, 2024, and was issued an Oklahoma driver's license on April 5. (*Id.* at PageID#550-51.)

Consistent with Gannett's reporting, public records confirm that 1212 Atlantic Properties LLC is a development company of which Jennifer Bondar is a managing member; the LLC rented a condo in a building at 1945 S Ocean Drive in Hallandale Beach, Florida; and that condo is owned

by Russian pop stars with whom Vladimir Putin had a relationship. Plaintiff claims, however, that he was never personally a member of the LLC, and his sole connection to that entity or those Russians is through his marriage to Jennifer Bondar.

On June 17, 2024, the day before the primary election, ABC picked up the story, reporting that *The Oklahoman* had reported that "Bondar has tangential ties to a couple connected to Russian President Vladimir Putin." (Mem. in Supp. Mot. to Dismiss Ex. 2, *Bondar v. ABC News, Inc.*, No. 25 C 12226, Dkt. No. 6-2.) The article went on to explain, "Government records show that through business relationships in South Florida, Bondar's wife may have a loose connection to a Russian pop star who has received awards from Putin -- a tie that Bondar's campaign rejects." (*Id.* at PageID#54.) The article then related facts similar to those reported by *The Oklahoman*, including the Bondar campaign's clarification that the business partner had leased the apartment in the name of the business and he had since moved into a different apartment. Plaintiff was quoted as saying that "reports about his ties to Russians" are "fake." (*Id.*) Additionally, the article stated that Plaintiff's "current address is in Texas," although he had "recently moved into Oklahoma" and "he said he has leased a home in Oklahoma." (*Id.* at PageID#51, 53.)

The following evening, on June 18, 2024, after the election results were in, ABC published another story about the race, in which it again mentioned reports of "ties between Bondar and people connected to Russian President Vladimir Putin" and provided the same background information about the *Oklahoman* report and the clarifying statements from Plaintiff and the campaign spokesperson. (Mem. in Supp. Mot. to Dismiss Ex. 1 at 3-5, *Bondar v. ABC News, Inc.*, No. 25 C 12226, Dkt. No. 6-1.) From this version of the story, ABC removed the statement that

Plaintiff's "current address is in Texas," and it appended an editor's note stating that "an earlier version of this story misstated Bondar's current address," as he was in fact "currently living in a rental home in Stonewall, Oklahoma," and had "obtained an Oklahoma driver's license on April 3, 2024." (*Id.* at 6.)

Public records confirm that, not only did Plaintiff vote in Texas as recently as three months before the election, he claimed a homestead exemption on his Texas home, which he kept throughout his campaign. Plaintiff claims that these false reports caused him to lose the primary election, in which he had personally invested millions of dollars. He alleges that the fact that ABC only corrected the statement about his address in the June 18, 2024 story, after voting had concluded, shows that ABC acted with actual malice. He asserts three claims against each defendant, for defamation *per se* (Counts I and IV), defamation *per quod* (Counts II and V), and false light invasion of privacy (Counts III and VI).

## II. Legal Standards

A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To state a claim, the plaintiff must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alteration marks omitted). This requires the plaintiff to make factual allegations that "raise a right to relief above the speculative level." *Id.* Stated differently, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). However, it need not "accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (cleaned up). The Court may consider, "in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To state a defamation claim under Illinois law, which all parties cite, "a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009); *see Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006). In assessing the truth of a statement, courts must "give the defendant's words their natural and obvious meaning, after having considered 'both the substance of defendant's alleged statements and the context in which they allegedly were made.'" *Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016) (quoting *Green*, 917 N.E.2d at 464); *see Naked City, Inc. v. Chicago Sun-Times*, 395 N.E.2d 1042, 1044 (Ill. App. Ct. 1979) ("In determining if an article is [defamatory], the words complained of must be construed in the context of the article

as a whole, and the headline must be considered together with the text of the article."). "[I]f the gist of a defamatory statement is true, if in other words the statement is substantially true, error in detail is not actionable." *Haynes v. Alfred A. Knopf, Inc.*, c, 1227 (7th Cir. 1993). "Implicit in this defense is the idea that [the] publication as it stood must make the plaintiff significantly worse off than a completely or literally truthful publication would have." *Pope v. Chron. Pub. Co.*, 95 F.3d 607, 613 (7th Cir. 1996). Similarly, allegedly defamatory statements are not actionable if they are "'reasonably capable of an innocent construction.'" *Huon*, 841 F.3d at 738 (quoting *Green*, 917 N.E.2d at 463).

In addition to these common-law requirements, the First Amendment imposes certain additional limits on defamation claims. Statements are constitutionally protected if they "cannot be 'reasonably interpreted as stating actual facts.'" *Bryson v. News Am. Publications, Inc.*, 672 N.E.2d 1207, 1220 (Ill. 1996) (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)). Under this principle, a statement is not actionable if it consists only of opinion, rhetorical hyperbole, or otherwise "loose, figurative or hyperbolic language," *Bryson*, 672 N.E.2d at 1220, that is "either too vague to be falsifiable or sure to be understood as merely a label for the labeler's underlying assertions." *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996).

Further, when the plaintiff is a "public figure," he must demonstrate that the defendant made the allegedly defamatory statement with "actual malice." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 612 (7th Cir. 2013) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). "Actual malice," in this context, means "with knowledge that [the challenged statement] was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S.

at 279-80. Political candidates, like Plaintiff, qualify as "public figures" for purposes of this principle. *See id.* at 279-82; *Howell v. Blecharczyck*, 457 N.E.2d 494, 498 (Ill. App. Ct. 1983). Such plaintiffs must plausibly allege "'that the defendant in fact entertained serious doubts as to the truth of his publication,' or 'actually had a high degree of awareness of . . . probable falsity.'" *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), and *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989)).

"To state a cause of action for false-light invasion of privacy, a plaintiff must allege that: (1) the plaintiff was placed in a false light before the public as a result of the defendants' actions; (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Dobias v. Oak Park & River Forest High Sch. Dist. 200*, 57 N.E.3d 551, 574 (Ill. App. Ct. 2016).

**III. Discussion**

When this case was last before the Court on motions to dismiss, the Court granted dismissal, reasoning that Plaintiff had not plausibly alleged actual malice. *See Pippen*, 734 F.3d at 614. The dismissal was without prejudice because the Court could not say whether Plaintiff might be able to muster the factual detail necessary to state a plausible claim in an amended complaint. Plaintiff has added some new allegations to his amended complaint, but they do not contain "factual content" sufficient to "'nudg[e]' his claim . . . 'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570). It does Plaintiff no good

to add "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks*, 578 F.3d at 581 (cleaned up) (citing *Iqbal*, 556 U.S. at 678). But he has added little more than that, and the total factual content does not "suffic[e] to render [his] claim plausible." *Pippen*, 734 F.3d at 614.

The new material includes allegations that Defendants "made extensive efforts to dig up records" to investigate the Russian-connection statements, and therefore, according to Plaintiff, Defendants were "aware, or should have been aware," that those statements were false. (Am. Compl. ¶ 25.) Similarly, Plaintiff alleges, Defendants had a "high degree of awareness of the probable falsity" of the Texas residency claims. (*Id.* ¶ 26.) These are mere conclusory statements that do no more than spell out Plaintiff's theory, without adding the factual content necessary to nudge any inference that Defendants acted with actual malice—that is, with "serious doubt" as to the truth of the publication or a "high degree of awareness of probable falsity," *Lemelson*, 903 F.3d at 24—across the line from conceivable to probable. *See Arpaio v. Cottle*, 404 F. Supp. 3d 80, 84 (D.D.C. 2019).

As the Court explained in its previous dismissal order, the statements that Plaintiff challenges had a foundation in facts backed by public records, and Plaintiff has not alleged that Defendants had any reason to know that they were false in any aspect. Defendants were not required to investigate the matter more fully before reporting what facts they were aware of. *See Pippen*, 734 F.3d at 614 (citing *Connaughton*, 491 U.S. at 688 ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard [for the truth]."')); *Moore v. Cecil*, 488 F. Supp. 3d 1144, 1164 (N.D.

Ala. 2020). Defendants were only required to desist from reporting what they knew if they knew enough to "'confirm the probable falsity' of the allegedly defamatory statements." *Lemelson*, 903 F.3d at 25 (quoting *Connaughton*, 491 U.S. at 688). The amended complaint, like its predecessor, is bereft of any factual allegations plausibly suggesting that Defendants had reason for serious doubt about the veracity of their statements. To the extent that the amended complaint includes additional allegations about the depth of the investigation Defendants performed before publishing stories about Plaintiff, such facts are as likely to "undercut" any inference of actual malice as strengthen it. *See Portnoy v. Insider, Inc.*, No. CV 22-10197, 2022 WL 16748583, at *8 (D. Mass. Nov. 7, 2022) (citing *Lemelson*, 903 F.3d at 24); *see also Donald J. Trump for President, Inc. v. WP Co. LLC*, No. CV 20-626 (RC), 2023 WL 1765193, at *5 (D.D.C. Feb. 3, 2023) (citing *Lohrenz v. Donnelly*, 350 F.3d 1272, 1286 (D.C. Cir. 2003)). The Court previously dismissed Plaintiff's complaint because he had not plausibly alleged that Defendants acted with actual malice, and he has not added enough factual content to the amended complaint to require a different decision.

As in the last round of motions to dismiss, Defendants also attack the alleged falsity of the challenged statements, contending that their articles are substantially true. Judicially noticeable public records show that 1212 Atlantic Properties LLC, of which Jennifer Bondar was a member, did rent a condo owned by Russian pop stars with whom Vladimir Putin had a relationship. Similarly, public records show that Plaintiff voted in Texas in March 2024, and he claimed a homestead exemption on his Texas home, which he still owned at the time of the campaign. According to Defendants, to the extent that the challenged statements contain any details that are seemingly false as to whether Plaintiff was a "Texan" or leased an apartment from people "tied to

Putin," it makes no difference because, on balance, the statements are substantially true, and they are subject to an innocent construction interpreting them in accord with their foundation in truth.

As before, Plaintiff does not fully engage with these arguments. He occasionally refers to the statements as completely "fabricated," which ignores that they include indisputably truthful elements. As Defendants explain, "[e]very detail" to which Plaintiff objects in their articles is rooted in "public documents," *see Wilkow v. Forbes, Inc.*, 241 F.3d 552, 556 (7th Cir. 2001), which demonstrates "the truth of the 'gist' or 'sting'" of the challenged statements. *Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 982 (7th Cir. 2004); *see id.* at 986-87; *see also id.* at 989 (citing *Vachet v. Cent. Newspapers, Inc.*, 816 F.2d 313, 316-17 (7th Cir. 1987)). Plaintiff ignores this and does not refute that the gist of the challenged statements is substantially true.

Plaintiff's theory seems to be that the statements referring to him as a Texan and to leasing a condo from people tied to Putin, etc., were misleading because they were incomplete, exaggerated, and implied facts that were untrue. Plaintiff emphasizes that he had recently moved from Texas to Oklahoma, and only his wife—not he, personally—had ever held any interest in 1212 Atlantic Properties LLC, the entity that leased the condo. Therefore, according to Plaintiff, he could not properly be called a "Texan" or a lessee of the condo the LLC rented. The trouble with this argument is that it is primarily an objection not to false assertions of fact but to interpretations of disclosed facts. Even if an allegedly defamatory statement might be subject to the interpretation that it makes some disparaging implication, the statement is not actionable to the extent that it "includes the facts supporting that implication." *Hill v. Cosby*, 665 F. App'x 169, 175 (3d Cir. 2016). Where an allegedly defamatory statement uses "terms that are . . . sure to be

understood as merely a label for the labeler's underlying assertions[,] . . . the issue dissolves into whether those assertions are defamatory." *Dilworth*, 75 F.3d at 309. Here, the underlying facts are substantially true, as judicially noticeable public records show, and Defendants' articles provided information with context, including Plaintiff's campaign's clarifications and corrections, which "enables readers to draw their own conclusions 'based on facts accessible to everyone.'" *Cheng v. Neumann*, 51 F.4th 438, 447 (1st Cir. 2022) (quoting *McKee v. Cosby*, 874 F.3d 54, 60-61, 63 (1st Cir. 2017)); *Naked City*, 395 N.E.2d at 1044; *see Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 730–31 (1st Cir. 1992) (finding certain allegedly defamatory statements to be non-actionable because of "the comprehensive nature of the information provided in the articles" and "full disclosure of the facts underlying" the statements).

Perhaps readers would not themselves call someone a Texan who had recently leased a residence in Oklahoma, despite the fact that he had not sold the house in Texas where he had made his home for several years. Perhaps they would not characterize a lease entered into by a candidate's wife's business entity as a transaction that involved the candidate. But, because the underlying facts were substantially disclosed, including Plaintiff's campaign's response to journalistic inquiries about them, and the gist or sting of the disclosed facts was substantially true, Defendants did not expose themselves to liability for defamation by publishing articles including those interpretations. Relatedly, the statements that Plaintiff objects to are not defamatory because they are subject to an innocent construction. *Huon*, 841 F.3d at 739; *Lott v. Levitt*, 556 F.3d 564, 569-70 (7th Cir. 2009); *Pope*, 95 F.3d at 613 ("The court is not to balance reasonable constructions, nor is it necessary to conclude that the statement *cannot* be construed in a defamatory way.").

On the last round of motions to dismiss, the Court hesitated to reach these issues of substantial truth, interpretation, and innocent construction, given that this case is still at the pleading stage. *See Wilkow*, 241 F.3d at 556. The Court is now satisfied, however, that it is on firm ground in basing its ruling not just on actual malice but on these other issues, as well. The Court has not relied on any materials outside the pleadings except for the public records Defendants have cited, which are subject to judicial notice, and the allegedly defamatory articles, which are referred to in the complaint and central to it. These materials are all appropriately considered on a Rule 12(b)(6) motion to dismiss. *See Williamson*, 714 F.3d at 436; *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1126 n.1 (7th Cir. 2022); *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) ("In a defamation case, where the published material is central to a plaintiff's allegations, courts routinely look outside the four corners of the complaint to view the entire publication."); *see also Lott*, 556 F.3d at 570. Although the actual malice issue still suffices to support dismissal by itself, *see Pippen*, 734 F.3d at 614, dismissal is also appropriate for the other above reasons.

The parties raise other issues, but the above discussion is more than enough to explain why Plaintiff's defamation claims must be dismissed for failure to state a plausible claim. It follows that Plaintiff's false-light claims suffer the same fate. *See id.* at 613; *see also Madison v. Frazier*, 539 F.3d 646, 659 (7th Cir. 2008); *Dorman v. Madison Cnty.*, No. 3:21-CV-1395-JPG, 2022 WL 874733, at *4 (S.D. Ill. Mar. 24, 2022); *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 907 (7th Cir. 2007).

Plaintiff already had an opportunity to amend his complaint, but he made no "progress toward an acceptable complaint," and the Court is not "persuad[ed] . . . that an amendment would solve outstanding problems." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 819 (7th Cir. 2013). Given that Plaintiff appears to have put forth his best case, any further amendment would be futile. The dismissal is therefore with prejudice and without leave to amend. *Gurnee Motel v. Vill. of Gurnee*, No. 24 CV 9603, 2025 WL 1531144, at *6 (N.D. Ill. May 29, 2025) (citing *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022)). Both cases are terminated.

Both Defendants also request additional relief, including recovery of their fees and costs, as a sanction against Plaintiff for filing these meritless cases. Although Plaintiff failed to state a claim, there were some fairly subtle nuances to the issues at play, and the Court cannot say that Plaintiff filed this suit in bad faith. The Court notes that Plaintiff dropped a defendant after the Court's first dismissal order, in what appeared to be an effort to prune away weaker claims. It is a close question, but the Court concludes that sanctions would be overly harsh in these circumstances.

**SO ORDERED.** **ENTERED: August 25, 2026**



**HON. JORGE ALONSO**
**United States District Judge**